# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| FABIAN MARTINEZ, | ) | |
| ID # 32595-177, | ) | |
| Movant, | ) | No. 3:07-CV-1221-O (BH) |
| vs. | ) | No. 3:04-CR-0205-O (16) |
| | ) | ECF |
| UNITED STATES OF AMERICA, | ) | Referred to U.S. Magistrate Judge |
| Respondent. | ) | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementation thereof, this case has been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I. BACKGROUND

### A. Nature of the Case

Movant, an inmate currently incarcerated in the federal prison system, filed this Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 to challenge his federal conviction and sentence in Cause No. 3:04-CR-0205-O. The respondent is the United States of America (government).

### B. Procedural History

On June 23, 2004, movant was charged by indictment with conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 846 and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). (*See* Indictment, doc. 10.)[1] The indictment also included a

---

[1] Unless stated otherwise, all document numbers refer to the docket number assigned to the document in the underlying criminal action.

forfeiture count against movant (Count 5).  (*Id.*)

On November 20, 2004, movant signed an agreement to plead guilty to the drug conspiracy (Count 1) and a factual resume in which he admitted that he knowingly and intentionally conspired with others to distribute multiple kilograms of cocaine in the Dallas area during 2003 and 2004.  (*See generally* Plea Agreement, doc. 282; Factual Resume, doc. 283 at 2.)  He admitted that he distributed sixty-four kilograms of cocaine, and that he understood he could be held responsible for a greater quantity for purposes of sentencing.  (*Id.* at 2-3.)

On January 11, 2005, movant pled guilty to Count 1 before a United States Magistrate Judge. (*See* Tr. Rearraignment at 30-32, 37.)  The Magistrate Judge inquired about the voluntariness and the factual basis for the plea.  (*Id.* at 37.)  Being satisfied with the responses, the Magistrate Judge recommended that the District Judge accept the plea as voluntarily entered.  (*Id.* at 41.)  Movant filed no objection to the recommendation.  (*Id.*)  After a review of all relevant matters of record, the Court accepted the plea on January 24, 2005, and adjudged movant guilty as recommended.  (*See* Doc. 347.)  On September 23, 2005, the Court entered judgment on movant's guilty plea and sentenced him to 135 months imprisonment on September 27, 2005, (*see* Tr. Sentencing at 1; Judgment, doc. 599).  On November 9, 2006, the Fifth Circuit Court of Appeals affirmed movant's conviction.  *See United States v. Martinez*, 205 Fed. App'x 254, 254 (5th Cir. 2006) (per curiam), *cert. denied*, 127 S. Ct. 1847 (2007).

On July 9, 2007, the Court received the instant *pro se* motion to vacate pursuant to 28 U.S.C. § 2255 with an attached memorandum in support.  (*See* Mot. Vacate at 1 and attached memorandum.)  He therein claims that (1) his sentence violates the Sixth Amendment as interpreted by *United States v. Booker*, 543 U.S. 220 (2005) and similar cases; (2) the Court improperly enhanced

his sentence under USSG § 3B1.1(a); and (3) he involuntarily entered his guilty plea and waiver of appeal based upon alleged promises from his attorney or ineffective assistance of counsel.[2] (Mot. Vacate at 3; Mem. Supp. *passim*.) The Government contends that Claims 1 and 3 have no merit, and that Claim 2 was waived by movant's voluntary plea and is not cognizable on collateral review. (Resp. Opp'n Mot. § 2255 [hereafter Resp.].) Movant has filed a reply brief. (*See* Petr.'s Resp. [hereinafter "Reply"].)

## II. BOOKER CLAIM

Movant argues that his sentence violates the Sixth Amendment as interpreted by *United States v. Booker*, 543 U.S. 220 (2005); *Apprendi v. New Jersey*, 530 U.S. 466 (2000); and *Blakely v. Washington*, 542 U.S. 296 (2004). (Mem. Supp. *passim*.)

Under the advisory sentencing regime established in *Booker*, "[t]he sentencing judge is entitled to find by a preponderance of the evidence all the facts relevant to the determination of a Guideline sentencing range and all facts relevant to the determination of a non-Guidelines sentence." *United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005); *accord United States v. Jauregui*, No. 05-50547, 2006 WL 2460762, at *1 (5th Cir. Aug. 21, 2006) (per curium) (following *Mares* and noting that, "[b]y rendering the Guidelines advisory, *Booker* eliminated the Sixth Amendment concerns that prohibited a sentencing judge from finding facts relevant to sentencing"). Consequently, movant's *Booker* claim does not entitle him to relief in this action.

---

[2] Movant lists only two claims in his motion to vacate: (1) denial of effective assistance of counsel and (2) denial of right to appeal due to counsel. (*See* Mot. Vacate at 3.) For each claim, movant refers the Court to his memorandum for supporting facts. (*Id.*) Although the eleven-page memorandum is not a model of clarity, the Court liberally construes the memorandum as asserting the listed claims.

### III.  MISAPPLICATION OF SENTENCING GUIDELINES

Movant claims that the Court improperly enhanced his sentence under USSG § 3B1.1(a). It is well established, however, that the technical application of the sentencing guidelines is not subject to collateral review in a § 2255 motion. *E.g.*, *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999).  "Section 2255 motions may raise only constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage of justice if left unaddressed.  Misapplications of the Sentencing Guidelines fall into neither category and hence are not cognizable in § 2255 motions."  *Id.*  Accordingly, movant's claim regarding the trial court's misapplication of the guidelines is not cognizable under § 2255 and thus entitles movant to no relief.

The Court, moreover, properly enhanced movant's sentence pursuant to USSG § 3B1.1(a). That provision provides for a four-level increase in offense level "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Application Note 2 of § 3B1.1 indicates that enhancement is proper when the defendant leads just one other participant.   In this case, Agent Timmisch testified that (1) movant was one of twenty-six alleged conspirators; (2) there were multiple groups indicted under the same indictment; (3) from Las Vegas, Nevada, movant directed actions of other conspirators in Dallas, Texas, on one occasion; (4) movant was not at the top of the conspiracy; (5) although movant would sometimes act on his own, he also infrequently directed others in a leadership role.  (Tr. Sentencing at 4-11.)  Through this testimony, the government has shown by a preponderance of the evidence that movant was a leader of a criminal activity sufficient to enhance his sentence under § 3B1.1(a).  As recognized in the prior section, the Court properly considered the facts necessary to determine the proper sentencing range under the post-*Booker* advisory sentencing scheme.

## IV. VOLUNTARINESS OF GUILTY PLEA AND RELATED WAIVERS

Movant claims that he involuntarily pled guilty and waived his right to appeal due to ineffective assistance of counsel. (Mem. Supp. *passim*.) He also suggests that his plea was induced by promises by his attorney. (*Id.* at 2; Reply at 2.)

"When a defendant pleads guilty he or she . . . forgoes not only a fair trial, but also other accompanying constitutional guarantees." *United States v. Ruiz*, 536 U.S. 622, 628 (2002); *accord Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). For example, with an informed and voluntary waiver, a defendant may waive his right to pursue claims in a motion to vacate or on appeal. *See United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002); *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (per curiam). Because a plea relinquishes rights of the defendant, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences." *Ruiz*, 536 U.S. at 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). Ordinarily, a waiver is entered knowingly, intelligently, and with sufficient awareness when "the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances – even though the defendant may not know the specific detailed consequences of invoking it." *Id.* at 630. With "respect to a defendant's awareness of relevant circumstances, [the Constitution] does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor." *Id.*

Nevertheless, a plea induced by threats, improper promises, deception, or misrepresentation

is not voluntary. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). A plea qualifies as intelligent when the criminal defendant enters it after receiving "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). In determining whether a plea is intelligent, "the critical issue is whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor*, 933 F.2d at 329.

"*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently made." *Matthew v. Johnson*, 201 F.3d 353, 368 n.22 (5th Cir. 2000). Rule 11 of the Federal Rules of Criminal Procedure provides procedural safeguards for assuring that guilty pleas are entered voluntarily and knowingly. It requires "a judge to address a defendant about to enter a plea of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as well as his rights as a criminal defendant."[3] *United States v. Vonn*, 535 U.S. 55, 62 (2002). "The very premise of the required Rule 11 colloquy is that, even if counsel is present, the defendant may not adequately understand the rights set forth in the Rule unless the judge explains them." *Id.* at 78 (Stevens, J., concurring). A determination of whether a defendant understands the consequences of his guilty plea does not require a trial court to determine that the defendant has a perfect understanding of the consequences, however. The Court must only ascertain whether the defendant has a realistic

---

[3] Rule 11 has undergone various changes over the years. Fed. R. Civ. P. 11 (West 2007) (showing various amendments including amendments in 1999 and 2002); *United States v. Ruiz*, 536 U.S. 622, 631 (2002) (referring to Rule 11 as the "guilty-plea safeguards"); *United States v. Vonn*, 535 U.S. 55, 62 (2002) (recognizing the evolution of the rule over the past three decades).

or reasonable understanding of his or her plea. *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993) (recognizing that one of the core concerns behind Rule 11 is "a realistic understanding of the consequences of a guilty plea"). Compliance with the admonishments required under Fed. R. Crim. P. 11 provides "prophylactic protection for the constitutional rights involved in the entry of a guilty plea." *Id.* at 627.

"The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Fischer v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749).

> When examining the totality of the circumstances, a reviewing court should "consider the complexity of the charge, the defendant's level of intelligence, age and education, whether the defendant was represented by counsel, the judge's inquiry during the plea hearing and the defendant's statements, as well as the evidence proffered by the government."

*United States v. Cross*, 57 F.3d 588, 591 (7th Cir. 1995) (citations omitted). Courts considering challenges to guilty plea proceedings "have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea." *Gracia*, 983 F.2d at 627-28. A realistic understanding of the consequences of a guilty plea means that the defendant knows the "the immediate and automatic consequences of that plea such as the maximum sentence length or fine." *Duke v. Cockrell*, 292 F.3d 414, 416 (5th Cir. 2002). "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (*en banc*), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981). Furthermore, "[w]hen the record of the Rule 11 hearing clearly indicates that a defendant has read and understands his plea agreement, and that he

has raised no question regarding a waiver-of-appeal provision, the defendant will be held to the bargain to which he agreed." *United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005) (quoting *United States v. Portillo*, 18 F.3d 290, 293 (5th Cir. 1994)).

In addition, prisoners who challenge their guilty pleas on collateral review must overcome a "strong presumption of verity" accorded "solemn declarations" made in open court. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Prisoners must also overcome the presumption of regularity and "great weight" accorded court records. *See United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly); *Bonvillian v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that court records "are entitled to a presumption of regularity").

## A. Counsel's Alleged Promises

Movant claims that he pled guilty because his attorney told him that (1) he was sure that the government would not pursue a four-level enhancement for leadership role and (2) movant would get less than ten years imprisonment due to his substantial assistance. (Mem. Supp. at 2; Reply at 2.) Because movant generally challenges this conduct as ineffective assistance of counsel, the Court also considers whether the alleged statements from counsel could be construed as promises which rendered movant's plea involuntary.

A plea may be rendered involuntary due to an unfulfilled promise. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consid-

eration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). Nevertheless, when an alleged unfulfilled promise does not appear in the written plea agreement and such promise is inconsistent with representations made in open court, the defendant faces a heavy burden to obtain relief under 28 U.S.C. § 2255 on a claimed involuntary plea. *See United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (relying on the presumption in *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) that "'[s]olemn declarations in open court carry a strong presumption of verity,' forming a 'formidable barrier in any subsequent collateral proceedings'"); *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (presumption of regularity of court documents and the great weight accorded to them by the courts).

In this case, movant alleges that the promises were made by his counsel rather than the prosecution. The plea agreement entered into by movant is entirely inconsistent with such promises. Not only does the plea agreement set forth the range of punishment at ten years to life imprisonment, it specifically states in ¶ 4:

> Martinez agrees to have his sentence determined under the United States Sentencing Guidelines. He waives any right to have facts that determine his sentence under the guidelines alleged in an indictment and found by a jury beyond a reasonable doubt. Martinez agrees that the facts that determine the sentence will be found by the court at sentencing by a preponderance of the evidence and that the court may consider any reliable evidence, including hearsay. Martinez has reviewed the application of the guidelines with his attorney, but understands no one can predict with certainty what guideline range will be applicable in this case until after a presentence investigation has been completed and the Court has ruled on the results of that investigation.

(Plea Agreement at 2.) The agreement later states: "This plea of guilty is freely and voluntarily made and is not the result of force or threats or of promises apart from those set forth in this plea agreement. There have been no guarantees or promises from anyone as to what sentence the Court

will impose." (*Id.* at 4.)  Just before movant's signature, the agreement states that movant carefully reviewed every part of the agreement, and fully understood it.  (*Id.* at 6.)

At rearraignment, the Magistrate Judge placed movant under oath and informed him of perjury consequences for falsely answering the Court's questions.  (*See* Tr. Rearraignment at 5.)  The Magistrate Judge informed movant that the District Judge would decide the sentence based upon facts presented to him, and that movant should not "depend or rely upon any statement or promise by anyone . . . as to what the penalty will be in [his] case."  (*Id.* at 10.)  Movant stated that he understood these admonitions, and that his attorney had discussed how the sentencing guidelines would apply in his case.  (*Id.* at 11.)  While recognizing the attorney-client discussions, the Magistrate Judge informed movant that despite such discussions, the District Judge would consider the applicable sentencing guidelines but would be unable to determine the proper sentencing range until after the completion of a Presentence Report.  (*Id.* at 11-12.)  Movant stated that he understood these matters.  (*Id.* at 12.)

After the Magistrate Judge summarized the plea agreement with emphasis on specific provisions, such as the minimum and maximum terms of imprisonment (ten years to life) and maximum fine ($4,000,000), movant stated that he understood the consequences of pleading guilty.  (*Id.* at 32-33.)  He understood that he faced those punishments, and that the District Court would apply the sentencing guidelines.  (*Id.* at 33-35.)  Movant represented to the Court that he signed the plea agreement, voluntarily entered into it, and understood the sentencing range of ten years to life imprisonment.  (*Id.* at 30-33.)

Movant's unsupported suggestions of promises by his attorney are clearly belied by the record; accordingly, the Court finds no promise of a particular sentence and no promise that mov-

ant's sentence would not be enhanced for his leadership role. Furthermore, for movant to obtain relief under § 2255 "on the basis of alleged promises" that are inconsistent with representations made in open court at the time of the plea or with statements made in a signed court document, movant must "prov[e] (1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise." *See United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998). Movant has not carried that burden.

In addition, a defendant cannot ordinarily rely on "inaccurate representations of an over-zealous attorney." *United States v. Frontero*, 452 F.2d 406, 411 (5th Cir. 1971). To destroy the voluntariness of a plea in the context of an alleged promise not contained within the plea agreement, the defendant must have a reasonable ground for relying on the promise and the defense attorney must at least recognize the existence of the promise and the events leading to it. *See Frontero*, 452 F.2d at 411-12.

As already discussed, the suggested promises are inconsistent with the plea agreement and movant's sworn testimony at rearraignment. Neither movant nor his attorney suggested at rearraignment or sentencing that there was any promise outside the plea agreement. When counsel objected to the four-level increase due to movant's leadership role in the charged conspiracy, he did not argue that the enhancement would violate any promise made to movant. (*See* Sentencing Tr. at 3, 12-13.) Furthermore, while recognizing the substantial five-level departure the government recommended for movant's substantial assistance, counsel urged the Court to consider movant's "unique involve-ment" and "maybe [grant] an additional level or two" departure so that movant could "maybe . . . get a sentence seven, eight, nine years in that range." (*Id.* at 15.) Such urging does not reflect any promise that movant would be sentenced below the ten-year statutory minimum sentence. More-

over, because the alleged promises do not promise anything with respect to how the Court would sentence movant, there is no reasonable basis for reliance on such promises. There is no reasonable ground for movant to assume that any promise would be consummated by a sentence below the ten-year statutory minimum or a sentence unenhanced due to movant's leadership role.

For these reasons, the Court finds no promise of a sentence below the statutory ten-year minimum, no promise that movant's sentence would not be enhanced for his leadership role, and no basis to reasonably rely on any alleged promise. The Court finds no promise that rendered movant's guilty plea involuntary.[4]

## B. Ineffective Assistance of Counsel

Movant also claims that ineffective assistance of counsel renders his plea and waiver of appeal involuntary. He contends that his attorney induced him to plead guilty through the alleged promises or misinformation discussed above as well as a failure to recognize the implications of *Apprendi*, *Blakely*, and *Booker* on his plea and waiver of appeal. (Mem. Supp. *passim*.)

The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. A guilty plea is "open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) (quoting *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970)). However, a "defendant's mere subjective understanding that he would receive a lesser sentence" does not render

---

[4] To the extent movant claims that the government made a promise outside the plea agreement, the same analysis applies, and such claim does not entitle movant to relief in this action.

12

a plea involuntary. *Daniel v. Cockrell*, 283 F.3d 697, 703 (5th Cir. 2002).[5] The plea stands unless the expectation of a lesser sentence resulted from "a promise or guarantee by the court, the prosecutor or defense counsel." *Id.*

To successfully state a claim of ineffective assistance of counsel, movant must ordinarily demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

To establish prejudice under *Strickland*, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Movants must "affirmatively prove prejudice." *Id.* at 693. The prejudice component "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17

---

[5] The Court does not cite *Daniels* for any proposition potentially abrogated in *United States v. Grammas*, 376 F.3d 433, 437-38 (5th Cir. 2004) (abrogating reliance on a "significantly less harsh test" of prejudice for sentencing errors in the § 2255 context), to the extent that any such abrogation occurred. *See* 376 F.3d at 438 n.4 (specifically distinguishing *Daniel* because that case dealt with prejudice in the context of § 2254).

(2000) (citations and internal quotation marks omitted). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96. One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations, furthermore, are insufficient to obtain relief under § 2255. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding"). In the context of a guilty plea, the *Strickland* "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985). To satisfy this requirement, the prisoner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 58.

1. *Alleged Promises or Misinformation*

In this instance, movant alleges that his attorney induced his guilty plea by telling him that he would receive less than ten years imprisonment and the government would not enhance his sentence for his leadership role. (Mem. Supp. at 2; Reply at 2.) Because the Court has already found no basis for relying on these alleged statements by counsel, the Court finds no prejudice and no ineffective assistance on this basis.

Furthermore, even assuming deficiency for purposes of the instant § 2255 action, the alleged misinformation does not amount to ineffective assistance of counsel in light of movant's affirmative statements at rearraignment and the specific admonitions of the Court to him. *See Lott v. Hargett*,

80 F.3d 161, 167-68 (5th Cir. 1996) (recognizing that when an attorney allegedly provides misinformation to a defendant prior to his plea, any potential prejudice may be cured during the plea colloquy). Movant has shown no reasonable probability that, at the time of his plea, he would have insisted on proceeding to trial in the absence of the alleged statements of counsel. Movant was advised through both the plea agreement and the plea colloquy that the statutory maximum sentence for the charged offense was life imprisonment, and that the Court was solely responsible for determining the appropriate sentence after review of a Presentence Report that had yet to be completed. Through the written document movant likewise knew and understood that his plea limited his appellate rights. The Court specifically informed him during the plea colloquy that his appellate rights could be waived. (*See* Tr. Rearraignment at 12.) Movant voiced no concern about the waiver-of-appeal provision.

It is clear that movant understood the nature of the charge against him and the consequences of his plea, including the waiver of his appellate rights except in limited circumstances. By pleading guilty, movant avoided prosecution for a money-laundering count of the indictment and a forfeiture count. He also obtained a three-level reduction to his offense level for acceptance of responsibility, and his sentence was only fifteen months above the statutory minimum sentence. Movant reaped substantial benefits from the plea. Under the totality of circumstances, it appears that movant voluntarily entered his plea of guilty notwithstanding the alleged representations of counsel.

### 2. *Implications of Apprendi, Blakely, and Booker*

Movant also alleges that his attorney rendered ineffective assistance which rendered his plea involuntary by failing to recognize the implications of *Apprendi*, *Blakely*, and *Booker* on his plea and waiver of appeal. (Mem. Supp. *passim*.) He asserts that his attorney "was surely ineffective" when

he had him waive his rights to challenge the constitutionality of his sentence despite knowing that *Apprendi* and *Blakely* provided protections for his right against sentence enhancements by a judge. (*Id.* at 3-4.) Relatedly, he alleges that his attorney advised him to plead guilty even though the plea agreement violated *Apprendi*, *Blakely*, and *Booker*. (*Id.* at 3.) He contends that ¶ 4 of the plea agreement violates those cases because he therein agreed "to have his sentence determined under the United States Sentencing Guidelines" and waived his rights to a jury determination of the facts. (*Id.*)

The plea agreement in this case does not violate *Apprendi*, *Blakely*, or *Booker*. As discussed previously, *Booker* established an advisory sentencing regime in which the sentencing judge can determine all facts relevant to sentencing range. *See United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005). The Sentencing Guidelines are now advisory, but the courts still use them to formulate appropriate sentences. Movant has shown no reasonable probability that but for the alleged deficiencies of counsel he would have insisted on proceeding to trial in lieu of pleading guilty. Had petitioner proceeded to trial, he would have faced a money-laundering charge and would not been eligible for a sentence reduction for acceptance of responsibility. In addition, this would have likely altered the assistance he provided to the government, reducing the likelihood of a sentencing reduction for substantial assistance. These claimed deficiencies of counsel do not amount to ineffective assistance and do not render movant's plea or waiver of appeal involuntary.

In conclusion, movant has not shown that he involuntarily pled guilty or waived his right to appeal due to ineffective assistance of counsel.[6] He has not shown that his plea was induced by promises from his attorney. The totality of circumstances show that he voluntarily pled guilty to

---

[6] Notably, movant filed an appeal which the Fifth Circuit assumed *arguendo* was not barred by the appeal waiver. *See United States v. Martinez*, 205 Fed. App'x 254, 254 (5th Cir. 2006) (per curiam), *cert. denied*, 127 S. Ct. 1847 (2007).

Count 1 and voluntarily waived his right to appeal except for the limited circumstances set forth in his plea agreement.[7] The record reflects that movant understood the consequences of his plea. It reflects that movant had read and understood his plea agreement and raised no question regarding the waiver-of-appeal provision, except to clarify that he was deleting the one waiver contained in the original plea agreement. He has not overcome the presumptions of verity accorded to his sworn statements given at rearraignment or the signed plea agreement.

For all of these reasons, the Court should find that movant voluntarily pled guilty to Count 1 and voluntarily waived his appellate rights except in the limited circumstances set out in the plea agreement, and that his claims do not entitle him to relief in this § 2255 action.

## V. EVIDENTIARY HEARING

Section 2255 of Title 28 of the United States Code controls whether an evidentiary hearing is required in this case. The statute provides that no evidentiary hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b). Upon review of the motion to vacate and the files and records of this case, an evidentiary hearing appears unnecessary. In this instance, the matters reviewed by the Court conclusively show that movant is entitled to no relief.

## VI. RECOMMENDATION

For the foregoing reasons, the Court should **DENY** the Motion to Vacate, Set Aside, or

---

[7] Although the original plea agreement stated that "Martinez also agrees to waive all constitutional challenges to the validity of the Sentencing Guidelines", such statement was stricken from the document because he did not want to waive that right. (*See* Plea Agreement at 2; Tr. Rearraignment at 30-31.) The agreement also indicates that movant waived his right to appeal his conviction and sentence except that he reserved his right to appeal (1) a sentence exceeding the statutory maximum punishment, (2) an upward departure from the guideline range deemed applicable by the Court, and (3) an arithmetic sentencing error. (*See* Plea Agreement at 4-5.)

Correct Sentence brought pursuant to 28 U.S.C. § 2255 with prejudice.

**SIGNED this 20th day of November, 2008.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE